IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRENCE ANDERSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-683 |
| SGT. W. THOMAS, et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants William James Beeman, RN and Corizon, Inc.'s ("Corizon Defendants") Motion for Judgment on the Pleadings (ECF No. 15) and Defendants Sgt. William Thomas and CO II Corey Dolly's ("State Defendants") [1] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant in part and deny in part the Motion for Judgment on the Pleadings and the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

---

[1] State Defendants' proper names are Sergeant William Thomas and Officer Corey Dolly. (See Mem. Supp. Defs.' Mot. Dismiss Pl.'s Compl. or Summ. J. ["Mot. Summ. J."] at 1, ECF No. 23-1). The Court will direct the Clerk to update the docket accordingly.

# I.   BACKGROUND

## A.   Anderson's Allegations

Plaintiff Terrence Anderson is a state prisoner currently housed at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 2, ECF No. 1-2). On November 27, 2019, Anderson was housed in administrative segregation, when he informed Officer Frantz that due to his chronic health conditions, he needed a 2,400-calorie diet containing no eggs. (Id.). Despite his request, Anderson was "given a regular diet" for two days. (Id.).

On November 29, 2019, Anderson informed Frantz that the dietary department needed to correct the issue. (Id.). Frantz responded, "[y]ou don't tell me what to do." (Id. at 3). In his Opposition, Anderson notes that he proceeded to request to speak with Frantz's supervisor. (Decl. & Resp. Opp'n Mot. Dismiss Mot. Summ. J. ["Opp'n Summ. J."] at 2, ECF No. 25). Anderson and Frantz were speaking through the slot door, and Frantz instructed Anderson to move his arm out of the slot. (Opp'n Summ. J. at 3). Anderson stated that he had not yet received his meal tray. (Id.). Frantz then tried to close the slot door, causing the slot to hit Anderson's hand, and he deployed pepper spray through the slot into Anderson's face. (Compl. at 3).

In compliance with institutional procedure, Sergeant Thomas and other backup officers were called to Anderson's cell after Frantz deployed the pepper spray. (Id.). The officers handcuffed Anderson and escorted him to the medical room in Housing Unit #1. (Id.; Opp'n Summ. J. at 4). Anderson explains in his Opposition that he required immediate

medical attention because his asthma made it difficult to breathe after he was pepper sprayed. (Opp'n Summ. J. at 4).

Once inside the exam room, Anderson tried to explain the situation to the Assistant Director of Nursing, Williams James Beeman, RN, but was having difficulty breathing. (Compl. at 3; Opp'n Summ. J. at 5). Anderson noticed Thomas in the room and claims this was contrary to institutional procedures, as officers are supposed to leave the exam room and observe through a window after cuffing an inmate to the exam table. (Opp'n Summ. J. at 5). During this conversation, Thomas moved towards him with a "black grove [sic] with metal on it" and hit Anderson repeatedly on the right side of his face until he lost consciousness, while other officers held him down. (Compl. at 3).

Anderson woke up in a holding cell, bloody, with his eye swollen shut. (Id. at 3). There was a pool of blood on the floor and there was blood in the front and back of his underwear. (Id.). The same officers then escorted Anderson back to his cell. (Id.). He requested to see medical staff before returning but was told that he had refused treatment from Nurse Beeman, which Anderson denies. (Id.).

Anderson explained his situation to an unidentified nurse who subsequently called personnel to evaluate Anderson under the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 et seq., on December 2, 2019. (Id. at 3–4). RNP Holly Hoover then examined Anderson and sent him to Western Maryland Health System Regional Medical Center. (Id. at 4). Western Maryland determined that Anderson's right zygomaticum-axillary complex was fractured. (Id.). He needed to go to Bon Secours Hospital for treatment, but at the time

of filing the Complaint, Anderson had not received such treatment and he has suffered further injury as a result. (Id.).

Anderson alleges that the administration of NBCI is all white and many officers are related to each other, specifically Officer Dolly, his father, and brothers who all work at NBCI. (Id.). He believes that this creates a biased culture at the institution and violates institutional policy. (Id.).

On November 29, 2019, Anderson received a notice of infraction from Frantz stating that he failed to comply with orders to remove his arm from the slot in the cell door. (Id.). Anderson was not present for his adjustment hearing, where he was found guilty. (Id.). Anderson also states that Thomas was promoted and sent to Western Correctional Institution, and that Dolly and the other officers involved were moved to different tiers. (Id. at 5).

Anderson filed a grievance on December 10, 2019. (Id.). He did not receive a response and appealed to the Commissioner of Correction on February 3, 2020, and then to the Inmate Grievance Office on March 17, 2020. (Id.). He received a response on July 13, 2020. (Id.).

**B.     State Defendants' Response**

State Defendants primarily rely on the Video Exhibit which shows that on November 29, 2019, Frantz was standing outside Anderson's cell talking to him and Anderson eventually threw what appears to be crumpled paper out onto the tier floor. (Video Ex. at 9:27:15–9:29:30, ECF No. 23-4). Frantz and Anderson continued talking; someone arrived with a tray but left without giving it to Anderson. (Id. at 9:31:04–9:31:17).

Moments later, Frantz disbursed pepper spray through the feed slot, closed it, and made a call over the radio. (Id. at 9:31:29–9:31:40). Thomas arrived to assist Frantz and handcuffed Anderson. (Id. at 9:37:07–9:38:54). Frantz and Thomas then escorted Anderson out of his cell to a medical exam room. (Id. at 9:38:56–9:39:03, 9:39:00−9:39:14, 9:39:29–9:39:32). Five officers entered the room with Anderson and two additional officers stood outside. (Id. at 9:39:30–9:40:02). The video does not show what occurred inside the exam room.

In the November 29, 2019 Use of Force Incident Report, Frantz states that he tried to collect Anderson's tray when Anderson prevented the feed slot from closing by extending his arm through it. (Decl. John White ["White Decl."] at 14, ECF No. 23-3).[2] Frantz asked Anderson to remove his arm, but he refused and said, "I am going to get a supervisor down here and [shut] you down." (Id.). Anderson reached for his food tray and Frantz disbursed pepper spray through the feed slot to "prevent an assault." (Id.). Anderson backed away from the door and then swung his food tray at Frantz as he closed the feed slot. (Id.).

While Frantz and Thomas escorted Anderson from the cell to the medical department for a use of force evaluation, he "intentionally flung mucous and saliva onto Sergeant Thomas' face and head." (Id. at 15). Officer Dolly accompanied Thomas, Frantz, and Anderson to the medical department. (Id.). Anderson continued to spit, yell, and act in a belligerent manner. (Id.). Thomas punched Anderson once to prevent further assault and

---

[2] The docket entry names, numbers, and page references are those assigned by the Court's electronic docket.

then the officers forced Anderson onto the examination table to gain control. (Id. at 12).
"While being controlled on the examination table," Anderson refused to be evaluated by
RN William Beeman. (Id. at 12, 28).

Beeman avers that when he approached Anderson in the evaluation room, he saw
Anderson twice spit on Thomas and the officers then forced Anderson onto the exam table
to gain control. (William Beeman Decl. ["Beeman Decl."] ¶¶ 4−5, ECF No. 23-5). Beeman
did not see any blood on Anderson, nor was he aware that Anderson lost consciousness at
any time or that he was physically or sexually assaulted. (Id. ¶¶ 6−8).

Thomas directed Officer Phillip Deist to bring a pair of leg irons to the medical
room and Officer Brian Lichliter placed them on Anderson's ankles. (White Decl. at 13).
Thomas and Dolly escorted Anderson to the Housing Unit #1 Property Room Strip Cage.
(Id.). Anderson refused to comply with the strip search or to allow officers to remove the
leg irons. (Id.). According to Dolly, following an "extended cool down period," Dolly and
Officer James Lensbouer were able to remove the leg irons and complete the strip search.
(Id. at 17). Thereafter, Anderson was escorted back to the medical room and Beeman
evaluated him. (Id.). Beeman noted that Anderson's right eye was swollen and appeared
"black and blue" and there was a small, superficial cut on the right side of his mouth. (Id.
at 29–30). Anderson was cleared, brought to a cell, and placed on staff alert status. (Id. at
17).

Frantz issued Anderson an infraction for refusing to remove his arm from the slot,
misusing property, and threatening an officer with a weapon. (Id. at 21, 34). Thomas also

issued an infraction to Anderson for threatening an officer, assaulting an officer, and disobeying an order. (Id. at 24). Anderson was found guilty on all counts. (Id. at 48–49).

On November 30, 2019, Anderson told LPN Samantha Zimmerman that he wanted to file a PREA complaint. (Decl. Britt Brengle ["Brengle Decl."] at 28, ECF No. 23-2). Zimmerman reported the request to RN Jennifer VanMeter, who contacted Lieutenant Jeremy Crites. (Id. at 25, 28). Crites and Officers Justin Foutz and Nicholas Daniels interviewed Anderson. (Id. at 26). Anderson said that following the incident on November 29, 2022, Thomas "put something up his rectum" and that there was blood on his underwear. (Id. at 25). Anderson was strip searched and his underwear was taken into evidence by Foutz. (Id.). RN VanMeter further evaluated Anderson and noted that he was able to sit on the exam table without pain and there was no blood in his stool. (Id. at 30). However, his right eye was still swollen and bruised so he could not see out of it. (Id.). After the evaluation, officers took Anderson to shower and then escorted him back to his cell. (Id. at 26).

Ultimately, Anderson's PREA complaint was determined to be unfounded on August 5, 2020. (Id. at 45). The Intelligence & Investigation Division ("IID") Incident Report noted that Frantz, Dolly, Deist, and Beeman agreed that Thomas "did not touch or do anything sexually inappropriate to Inmate Anderson." (Id. at 14).

## C.    Procedural History

On March 18, 2021, Anderson filed his Complaint against Sergeant William Thomas, Officer Corey Dolly, RN William James Beeman, Corizon Inc., and "other officials" alleging Eighth Amendment violations resulting from excessive force and the

subsequent denial of medical care.[3] (Compl. at 1,). Anderson seeks monetary damages. (Id. at 7).

Corizon Defendants filed an Answer on April 28, 2021. (ECF No. 8). On June 29, 2021, Corizon Defendants filed a Motion for Judgment on the Pleadings. (ECF No. 15). Anderson did not oppose the Motion for Judgment, and Corizon Defendants did not file a Reply.

On September 9, 2021, State Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 23). Anderson filed a Declaration and Motion in Response in Opposition to the Motion to Dismiss or, in the Alternative, for Summary Judgment on October 14, 2021. (ECF No. 25). To date, no replies have been filed.

## II.    DISCUSSION

### A.    Standards of Review

#### 1.    Rule 12(c)

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The Court applies the same standard to Rule 12(c) motions for judgment on the pleadings and 12(b)(6) motions to dismiss for failure to state a claim. Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014). The Court tests "the sufficiency of a complaint" but will not "resolve contests surrounding the facts, the merits of a claim, or

---

[3] The "other officials" have not been identified or served and therefore will be dismissed without prejudice.

the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). As the Court addresses sufficiency, it bears in mind the requirements of Federal Rule of Civil Procedure 8, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and state "a plausible claim for relief," <u>Iqbal</u>, 556 U.S. at 678–79. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Although the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a 12(c) motion, "all well-pled facts are assumed to be true and all reasonable inferences are drawn in favor of the non-moving party." <u>Language Doctors, Inc. v. MCM 8201 Corporate, LLC</u>, No. PWG-20-1755, 2021 WL 718940, at *3 (D.Md. Feb. 24, 2021); <u>Belmora LLC v. Bayer Consumer Care AG</u>, 819 F.3d 697, 702 (4th Cir. 2016). "Ultimately, a defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff." <u>Somerville v. W. Town Bank & Trust</u>, No. PJM-19-490, 2020 WL 8256358, at *1 (D.Md. Dec. 4, 2020). "Moreover, unlike a Rule 12(b)(6) motion, a Rule 12(c) motion requires the court to

consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage of the litigation." Id. A motion for judgment on the pleadings "should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." United States v. Castillo, No. PWG-19-3459, 2021 WL 825974, at *3 (D.Md. Mar. 4, 2021) (quoting Shooting Point, LLC v. Cumming, 238 F.Supp.2d 729, 735 (E.D.Va. 2002)).

### 2.   Conversion

State Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80

F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, the Court concludes that both requirements for conversion have been satisfied. Anderson was on notice that the Court might resolve State Defendants' Motions under Rule 56 because State Defendants styled their Motion as a motion in the alternative for summary judgment and they presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Thus, the Court will treat State Defendants' Motion as a motion for summary judgment and will consider documents outside of Anderson's Complaint in resolving the Motion.

The Court notes that Anderson appears to oppose treating State Defendants' Motion as one for summary judgment. In Anderson's Opposition, he makes various requests for further discovery regarding a security cage, the size of the medical room, and the height difference between the parties. (Opp'n at 14). Although Anderson has not filed a separate affidavit, the Court finds his declaration sufficient to serve as a Rule 56(d) request for additional discovery. However, as Anderson provides no explanation as to how the requested discovery would create a genuine issue of material fact by itself defeating summary judgment, his requests will be denied without prejudice and the Court will proceed to the merits of Anderson's claims.

### 3.      Rule 56

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2),

13

and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.**     **Analysis**

**1.**     **Corizon Defendants' Motion for Judgment on the Pleadings**

First, Corizon Defendants argue that the Complaint fails to comply with Federal Rule of Civil Procedure 8(a), that Anderson admits his allegations against Beeman are guesses, and that he fails to plead any facts supporting a deliberate indifference claim. (Mot. J. Pleadings at 6, 8, ECF No. 15). At bottom, the Court will deny the Motion as for Beeman, but will grant it as for Corizon.

Initially, the Court notes that because Anderson is self-represented, the Court must liberally construe his Complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice."); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers").

Assuming the facts stated in the Complaint are true and drawing all reasonable inferences in Anderson's favor, the Court finds that the allegations against Defendant Beeman based on Beeman's failure to intervene in the alleged assault and failure to treat him following the use of pepper spray are sufficient to state a claim. Anderson alleges that on November 29, 2019, Beeman was present in the medical room when the officers used excessive force against him and that he did not provide any medical treatment that day following the use of pepper spray or the assault. (See Compl. at 3−4). Corizon Defendants assert that Anderson's allegations are "guesses" because when stating his cause of action, he says, "We don't know if he participated in these acts or not." (Mot. J. Pleadings at 6 (quoting Compl. at 5)). However, Corizon Defendants ignore Anderson's affirmation that

Beeman was present during the alleged assault. (Compl. at 5). Thus, the Court can reasonably infer that Anderson is asserting that while it is unknown whether Beeman participated in the assault, he was present and did not intervene despite his ability to do so. See Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) (failure to take any action in an ongoing assault can amount to deliberate indifference). Accordingly, the Court finds that Anderson states claims for violations of the Eighth Amendment and Corizon Defendants' Motion will be denied as to Defendant Beeman.[4]

Still, even construing the Complaint liberally, the Court does not find that Anderson provides sufficient facts to state a claim against Corizon, Inc. Anderson states that he is challenging Corizon's hiring and training practices of their employees. (Compl. at 2). Anderson claims their employees "have troubled backgrounds and work in the interests of these companies, not for the citizens or the patients." (Id. at 5). However, Anderson fails to state any facts in support of his conclusion and the remainder of his requests to the Court only ask for further investigation into Corizon's hiring practices. (Id.). Accordingly, because Anderson fails to assert that Corizon violated his constitutional rights, the Motion

---

[4] To the extent Anderson seeks to bring a claim for medical malpractice, his claim is subject to dismissal. (See Compl. at 6). Medical malpractice claims must first be presented to the Maryland Health Claims Arbitration Board before a complaint may be filed in court if the plaintiff more than $30,000 in damages. See Md. Code Ann., Cts & Jud. Proc. § 3-2A-02 et seq.; Davis v. Frostburg Facility Operation, LLC, 177 A.3d 709, 715 (Md. 2018). Nothing in the pleadings demonstrates that Anderson has complied with this prerequisite.

Additionally, to the extent Anderson seeks injunctive relief requiring Beeman to testify under oath regarding the events in question, his request is denied. (See Compl. at 6). A party can only be forced to testify at trial with a subpoena under Federal Rule of Civil Procedure 45.

for Judgment on the Pleadings will be granted as to Corizon, Inc. and Anderson's request seeking declaratory or injunctive relief will be dismissed.

**2.    State Defendants' Motion for Summary Judgment**

Anderson raises a claim for violation of his Eight Amendment rights regarding the use of force in the exam room and his sexual assault claim. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Boone v. Stallings, 583 F.App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"—the subjective component, Thompson v. Virginia, 878 F.3d 89, 98 (4th Cir. 2017) (quoting Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious"—the objective component, Boone, 583 F.App'x at 176 (quoting Williams, 77 F.3d at 761).

To determine whether Defendants acted maliciously or sadistically to cause harm so as to satisfy the first element, the Court applies a nonexclusive, four-factor balancing test:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

Thompson, 878 F.3d at 99 (citing Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)).

17

### a.    Exam Room Assault

The Court cannot reasonably weigh the required factors because Anderson's Complaint and Opposition create genuine disputes of material fact. The crux of State Defendants' argument is that Thomas "utilized the minimum amount of physical force necessary to protect himself" by punching Anderson once in the face to defend himself and the other officers from Anderson spitting saliva and mucus on them. (Mot. Summ. J. at 6). Thus, the State argues that the other officers, including Dolly, forced Anderson onto the exam table to "gain compliance" and "restore discipline." (Id. at 6–7). However, according to Anderson, Dolly jumped on his back to knock him into the exam table and Dolly and Thomas then punched him in the face until he was unconscious and bloody. (Opp'n Summ. J. at 5).

Further, Anderson avers that he was seated on the exam table attempting to talk to RN Beeman about the pepper spray incident when Defendants assaulted him, which, if true, would make the need for any use of force unnecessary. (See id. at 5). Therefore, there is a dispute of material fact as to Anderson's behavior in the exam room. Anderson's Opposition also includes medical records from December 2, 2019, three days after the incident, which indicate he suffered a complex fracture to the right side of his face, which contrasts with the Defendants' assertion that his face was simply bruised and swollen. (See Med. Records at 4, ECF No. 25-1).

Because the events occurring in the medical exam room cannot be viewed on the video footage provided and genuine disputes exist as to the need for force, the amount of

force actually used, and the severity of the injury inflicted, summary judgment is inappropriate. State Defendants' Motion will be denied as to the excessive force claim.

### b.   Sexual Assault

Next, even weighing the facts in the light most favorable to Anderson, the Court finds that Defendants are entitled to judgment as a matter of law as to Anderson's sexual assault claim. Anderson's Complaint provides little detail regarding his allegation of sexual assault, even acknowledging that he does not know whether a sexual assault actually occurred. (Compl. at 5). What evidence he does submit to the Court with his Opposition indicates that he was taken to a hospital for a rape kit on December 2, 2019, at which time he "denie[d] any rectal injuries or foreign bodies" and declined to have the examination. (Med. Records at 5, 6).

State Defendants submit evidence that supports a finding that Anderson was not sexually assaulted. The other officers present, Frantz, Dolly, and Deist, reported to the investigator that Thomas did not inappropriately touch Anderson, and Beeman attests to the same in his declaration. (Beeman Decl. ¶¶ 7–8). Furthermore, after investigation, Anderson's PREA complaint was determined to be unfounded. (See Brengle Decl. at 14). As Anderson has failed to submit anything disputing this material fact, the Court finds that State Defendants are entitled to summary judgment on the sexual assault claim.

### III.   CONCLUSION

For the foregoing reasons, Corizon Defendants' Motion for Judgment on the Pleadings (ECF No. 15) is granted in part and denied in part and State Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion for

Summary Judgment (ECF No. 23), is granted in part and denied in part. A separate Order

follows.

Entered this 13th day of December, 2022.

_____ /s/ _____

George L. Russell, III
United States District Judge
