## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

TERENCE ANDERSON                     *

    *Plaintiff,*                          *

v.

                                  *          Civil No. 21-0683-BAH

SGT. W. THOMAS, et al.,               *

    *Defendants.*                         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Terence Anderson brought suit against Nurse Practitioner Holly Hoover ("Defendant" or "Defendant Hoover"), alleging violations of Plaintiff's civil rights under the Eighth and Fourteenth Amendments. ECF 83, at 3 ¶ 9. This case arises under 42 U.S.C. § 1983. *Id.*

When Plaintiff filed his original complaint, ECF 1, in 2021, he was not represented by counsel. On January 31, 2023, Judge Russell appointed pro bono counsel to represent Plaintiff. ECF 49. Subsequently, Plaintiff filed a First Amended Complaint, ECF 65. Following additional discovery, Plaintiff filed a Second Amended Complaint ("the Complaint") to add Nurse Practitioner Holly Hoover as a defendant, ECF 83. Defendant Hoover is a Certified Registered Nurse Practitioner (CRNP) working at North Branch Correctional Institution. *Id.* at 3 ¶ 8.

Pending before the Court is Defendant Hoover's motion to dismiss the Complaint. ECF 88. Plaintiff filed an opposition. ECF 91. All filings include memoranda of law and exhibits.[1]

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

On November 27, 2019, Plaintiff Terence Anderson, who suffers from a chronic neuropathic condition, ECF 83, at 18 ¶ 72, was transferred to North Branch Correctional Institution ("NBCI") from another Maryland Department of Corrections facility. *Id.* at 3 ¶ 11. Two days after this transfer, Plaintiff was in his cell when Officer Jason Frantz[2] allegedly pepper sprayed him. *Id.* at 4 ¶ 14. According to the Complaint, Officer Frantz claimed that he pepper sprayed Plaintiff "because Plaintiff threatened to throw feces on him." *Id.* ¶ 15. Plaintiff asserts he never made such a threat. *Id.*

Immediately following this incident, Officer Frantz called for his supervisor, Sergeant William Thomas,[3] who handcuffed Plaintiff and led him to the medical room on Housing Unit #1 for evaluation. ECF 83, at 5 ¶ 17. Plaintiff states that because he was handcuffed, he was unable to "wipe his face to alleviate the burning in his eyes, nose and mouth, and the associated flow of tears, mucous and saliva," so he "shook his head from side-to-side." *Id.* ¶ 18. Sergeant Thomas later alleged that Plaintiff "intentionally flung mucous and saliva onto [Thomas'] face and head." *Id.* ¶ 19. Plaintiff asserts that the officers "waited until they were in the medical room to respond to Plaintiff's alleged slinging of mucous and saliva because they would be unobserved by surveillance cameras." *Id.* at 6 ¶ 23. Officer Corey Dolly[4] joined the correctional officers in

---

[2] Officer Frantz is also named as a Defendant in this case. ECF 83, at 1.

[3] Sergeant Thomas is also named as a Defendant in this case. ECF 83, at 1.

[4] Officer Dolly is also named as a Defendant in this case. ECF 83, at 1.

escorting Plaintiff, and Nurse William Beeman[5] followed them into the medical room. *Id.* at 5–6

¶¶ 20, 24. Plaintiff alleges that he tried to explain to Nurse Beeman what happened, but "while

his hands were still handcuffed behind his back," Sergeant Thomas and Officers Frantz and Dolly

"collectively held [Plaintiff] down and beat him to a pulp." *Id.* at 6 ¶ 26.

After the assault, Plaintiff contends Nurse Beeman falsely asserted that Plaintiff refused

treatment. ECF 83, at 7 ¶ 30. Instead of being treated for his injuries, Plaintiff alleges he was

taken to a "strip cage" where he "remained shackled for several hours before being strip searched

and then taken back to the medical room for an evaluation by Nurse Beeman." *Id.* ¶ 31. According

to the Complaint, Nurse Beeman's evaluation does not reflect all the injuries Plaintiff sustained or

the source of the injuries. *Id.* at 7–8 ¶ 32. Plaintiff further observes that Nurse Beeman used

"vague, euphemistic, and misleading terminology in Plaintiff's medical records," in order to

"cover up what happened." *Id.* Following the evaluation, Nurse Beeman did not prescribe

medication, order follow-up tests or imaging, or suggest other treatment. *Id.* at 8 ¶ 33. Despite

multiple requests by Plaintiff to be treated for his facial injuries following the incident, both Nurse

Beeman and Defendant Hoover allegedly "refused to bring him to sick call for treatment or refused

to see him." *Id.* at 11–12 ¶ 44. Plaintiff asserts that both Nurse Beeman and Defendant Hoover

had the duty and authority to attend to "the health care needs of the inmates at NBCI." *Id.* at 2–3

¶¶ 5, 8.

On December 1, 2019, Plaintiff was sent to Western Regional Medical Center ("WRMC"),

a medical facility outside of NBCI, for an "evaluation of a different issue." ECF 83, at 8 ¶ 34.

During his evaluation, a healthcare provider noticed Plaintiff's swollen face and ordered a CT

---

[5] Nurse Beeman is also named as a Defendant in this case. ECF 83, at 1. Nurse Beeman is a
registered nurse working at NBCI as Medical Assistant Director of Nurses. *Id.* at 2 ¶ 5.

scan. *Id.* The scan revealed "a displaced right zygomaticomaxillary complex fracture." *Id.* Subsequently, the healthcare provider noted in Plaintiff's medical records Plaintiff's "need for follow-up treatment and possibly surgery at an outside facility." *Id.* According to the facts set forth in the Complaint, those records were then "sent to NBCI, where they were made available to and reviewed by Nurse Beeman and Nurse practitioner Hoover." *Id.* Plaintiff alleges that Nurse Beeman and Defendant Hoover "knew there was a displaced zygoma fracture that needed follow-up care, but neither of them did anything to schedule or set that follow-up treatment in motion." *Id.* at 8–9 ¶ 34. Plaintiff did not receive treatment for his injuries and the "fractured facial bones healed over in their displaced position." *Id.* Consequently, Plaintiff's face was left "disfigured" and continues to cause him problems. *Id.*

Plaintiff asserts that the officials who investigated the use of force against him "never got a written statement from Nurse Beeman about what he witnessed, and Nurse Beeman never submitted a written statement to NBCI administration or his employer. ECF 83, at 11 ¶ 43. Moreover, Plaintiff alleges that the investigators "failed to interview numerous witnesses who reacted to what was going on in the medical room and saw Plaintiff's condition in the aftermath of the beating." *Id.* According to Plaintiff, officers at NBCI are required to take "photographs after a use of force on an inmate." *Id.* at 9 ¶ 36. However, investigators accepted "at face value" Sergeant Thomas' claim that he could not take a picture of Plaintiff's face because Plaintiff "failed to cooperate." *Id.* In fact, there was no "photographic, video, [or] physical evidence of key events [] associated with the beating." *Id.* The correctional officers who were allegedly involved in the incident submitted written reports and "used virtually identical language to describe what happened." *Id.* at 13 ¶ 54. Plaintiff further alleges that neither Nurse Beeman nor Defendant Hoover "brought the documented evidence of this major injury, or the need for follow-up surgical

4

evaluation and treatment recommended by the outside facility, to the attention of their supervisors or prison administrators." *Id.* at 11–12 ¶ 44.

In a separate but related matter, Plaintiff alleges Defendant Hoover "knew or should have known" of a chronic and severe neuropathic condition from which Plaintiff suffered and "which [was] causing progressive atrophy and numbness of his left hand." ECF 83, at 18 ¶ 72. Furthermore, Plaintiff contends Defendant Hoover had the "authority and duty" to make sure Plaintiff received surgery to address this condition, but "[i]nstead, she dragged her feet, found excuses not to schedule the surgery or to cancel it after it was scheduled, and did what she could to thwart Plaintiff's access to necessary medical care for his left-arm neuropathies." *Id.* at 18–19 ¶ 74. Plaintiff also contends that Defendant Hoover "deliberately withheld pain medication from him, abruptly discontinued and withdrew his medication for nerve pain for flimsy and pretextual reasons, ignored his sick call requests, and refused to see him in clinic." *Id.* at 18 ¶ 73. Plaintiff maintains that Defendant Hoover knew that if he was not treated his condition would worsen and he would "continue irreversibly to lose the use of his left hand." *Id.* at 18–19 ¶ 74. As a result, Plaintiff alleges he has "experienced unnecessary pain and suffering, and preventable deterioration of his left arm and hand." *Id.* at 19 ¶ 76.

Plaintiff brings three counts against all named defendants in the Complaint, including Defendant Hoover: (1) use of excessive force against Plaintiff in violation of the Eighth and Fourteenth Amendments; (2) failure to provide adequate medical care in violation of the Eighth and Fourteenth Amendments with respect to Plaintiff's injuries resulting from the use of excessive force; and (3) failure to provide adequate medical care for Plaintiff's preexisting medical condition in violation of the Eighth and Fourteenth Amendments. ECF 83, at 12–20 ¶¶ 46-77. Defendant

Hoover moves to dismiss all counts for failure to state a claim, or in the alternative, requests summary judgment. ECF 88.

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

When presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan,* 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment under Rule 56."
Fed. R. Civ. P. 12(d). The Court exercises its discretion to treat Defendant's motion as a motion
to dismiss. *See Pevia*, 443 F. Supp. 3d at 625.

## III.   DISCUSSION

Plaintiff brings his claim under 42 U.S.C. § 1983.[6] Plaintiff alleges that Defendant Hoover
was complicit in the use of excessive force against him and failed to provide him with proper
medical care. *See generally* ECF 83. Defendant contends that Plaintiff fails to state a claim as
"there are no specific allegations as to any actions of [Defendant] Hoover against Plaintiff,
especially those that would rise to the level of deliberate indifference as to each defendant
individually." ECF 88-1, at 5. The Court's analysis will focus on whether Plaintiff alleges facts
sufficient to show that it is plausible that Defendant Hoover violated Plaintiff's Eighth and
Fourteenth Amendment rights.

### A. Count I is dismissed because Plaintiff fails to allege that Defendant Hoover used excessive force against him.

In Count I, Plaintiff alleges that "Defendants' use of force against Plaintiff in the medical
room was excessive and constituted cruel and unusual punishment in violation of his rights under
the Eighth and Fourteenth Amendments of the United States Constitution." ECF 83, at 12 ¶ 48.
The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and

---

[6] 42 U.S.C. § 1983 provides "a method for vindicating federal rights." *Albright v. Oliver*, 510 U.S.
266, 271 (1994) (citation omitted). § 1983 provides a cause of action against any "person" acting
under color of state law who subjects the claimant to "the deprivation of any rights, privileges, or
immunities secured by the Constitution." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. §
1983, a plaintiff must allege the violation of a right secured by the Constitution and must show
"that the alleged deprivation was committed by a person acting under color of state law." *West v.
Atkins*, 487 U.S. 42, 48 (1988). Here, Defendant Hoover is a person acting under the color of state
law because, at the time relevant to this case, she was employed by NBCI as a healthcare provider.
Based on this determination, the Court will proceed to address whether Defendant Hoover's
conduct deprived Plaintiff of his constitutional rights.

unusual punishment." U.S. Const. amend. VIII. The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Excessive force claims of prisoners are analyzed under the Eighth Amendment as applied to the states through the due process clause of the Fourteenth Amendment." *Marshall v. Odom*, 156 F. Supp. 2d 525, 529 (D. Md. 2001) (citing *Robinson v. California,* 370 U.S. 660, 682 (1962).

Defendant argues that Plaintiff fails to provide "statements or allegations concerning any specific interactions between Plaintiff and Defendant Hoover," and that, "such generalized allegations without particularized detail as to any defendant are insufficient to state a claim." ECF 88-1, at 5 (citing *Langford v. Joyner*, 62 F.4th 122, 125–27 (4th Cir. 2023)). A complaint can survive a motion to dismiss if the plaintiff "makes allegations collectively against 'Defendants,'" so long as the complaint "contains sufficient factual allegations as to that defendant to state a plausible claim." *Langford*, 62 F.4th at 126. Here, under Count I, Plaintiff claims that Defendants' "*use of force . . . .*was excessive and constituted cruel and unusual punishment." ECF 83, at 12 ¶ 48 (emphasis added). But the Complaint makes clear that Defendant Hoover was not directly involved, or even present, when the officers allegedly used excessive force against Plaintiff in the medical room. *See* ECF 83, at 6 ¶ 24 (asserting that Officer Frantz, Sergeant Thomas, Officer Dolly, Nurse Beeman, and Officer Lichliter were in the medical room when the alleged excessive force took place). In fact, Defendant Hoover is only specifically mentioned in the context of the alleged failure to provide adequate medical care after other members of the correctional staff allegedly used excessive force on Plaintiff. *Id.* at 11 ¶¶ 44, 54. But failure to provide adequate medical care is a separate claim encompassed by Count II. *See infra* Section B. As such, Plaintiff fails to allege facts sufficient to establish that Defendant Hoover used any force on Plaintiff, let

alone excessive force and Defendant Hoover's motion to dismiss is granted with respect to Count I.[7]

### B. Count II survives Defendant's motion to dismiss because Plaintiff has sufficiently pled facts to establish that it is plausible that Defendant failed to provide medical treatment in connection with injuries sustained by Plaintiff on November 29, 2019.

Count II arises under the Eighth and Fourteenth Amendments of the Constitution and alleges that Defendant Hoover is responsible for failing to treat injuries Plaintiff sustained during the beating while Plaintiff was in her care. ECF 83, at 15–18 ¶¶ 61-70. Count II specifically pleads that Defendant Hoover "depriv[ed] Plaintiff of his constitutional rights to adequate medical care" by "failing to treat Plaintiff for the pepper spraying and for the beating administered in the medical room" which "caused him unnecessary and lasting pain." *Id.* at 17 ¶ 69; *id.* at 15–16 ¶ 63.

In *Estelle v. Gamble*, the Supreme Court concluded that, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (citation omitted). To establish deliberate indifference, Plaintiff must show: "(1) [Plaintiff] was exposed to a substantial risk of serious harm (the objective prong); and (2) [Defendant] knew of and disregarded the substantial risk to the

---

[7] Additionally, Plaintiff appears to have abandoned Count I of his Complaint by failing to address the excessive force claim against Defendant Hoover in his opposition to Defendant's motion to dismiss. *See generally* ECF 91. Plaintiff focuses exclusively on Defendant Hoover's deliberate indifference to Plaintiff's medical needs in the opposition to Defendant's motion to dismiss without any mention of an excessive force claim against Defendant Hoover. This suggests that Plaintiff has abandoned this aspect of his claim against Defendant Hoover. *See Ferdinand-Davenport v. Child.'s Guild*, 742 F. Supp. 2d 772, 783 (D. Md. 2010) ("By [plaintiff's] failure to address these arguments in her opposition to [defendant's] motion to dismiss, [plaintiff] has abandoned this claim."); *see also Johnson v. Nationstar Mortg., LLC*, Civ. No. GJH-14-02536, 2014 WL 5377636, at *2, n.2 (D. Md. Oct. 21, 2014) ("Plaintiff appears to have abandoned [a claim] of his complaint by failing to address in his opposition any of the arguments raised by [d]efendant relating to [that claim]."). Accordingly, the Court finds that Plaintiff abandoned his excessive force claim against Defendant Hoover.

inmate's health and safety (the subjective prong)." *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir.

2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)). The objective prong of the

deliberate indifference standard may be satisfied by identifying a "serious" medical condition.

*Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious . . . medical need' is 'one that

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225,

241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see also*

*Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

　　　The Court first analyzes the objective element of Plaintiff's case. Plaintiff asserts that "the

beating was so severe that, among other things, it crushed the right side of [his] face around the

zygoma, a bone or system of bones at the cheek and temple, bordering the eye." ECF 83, at 7 ¶

28. Two days after the alleged use of excessive force, Plaintiff was seen at WRMC for a separate

medical issue. *Id.* at 8 ¶ 34. Upon Plaintiff's arrival, a health care provider ordered a CT scan of

Plaintiff's face, which revealed a "displaced right zygomaticomaxillary complex fracture." *Id.*

The WRMC physician "noted the need for follow-up treatment and possibly surgery" in Plaintiff's

medical records and allegedly sent those records to NBCI. *Id.* The Complaint asserts that

Plaintiff's zygoma fracture was diagnosed by a physician and necessitated follow-up treatment,

thus Plaintiff states facts sufficient to satisfy the objective prong of the deliberate indifference

test—that he had a serious medical need—and the Court need not address whether he pled that the

condition was "obvious." *Iko*, 535 F.3d at 241. The Court now turns to the subjective prong.

　　　The subjective element of deliberate indifference requires Plaintiff to sufficiently plead

both an official's "actual [] knowledge of both the inmate's serious medical condition and the

excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178; *see also*

*Farmer*, 511 U.S. at 837 (plaintiff must plead that defendant actually knew of and disregarded an objectively serious condition, medical need, or risk of harm). "[M]ere delay or interference can be sufficient to constitute a violation of the Eighth Amendment." *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104–05). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Farmer*, 511 U.S. at 835); *see also Head v. Rakowski*, 695 F. Supp. 3d 663, 693 (D. Md. 2023). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (citations and quotations omitted). In addition, "failure to respond to an inmate's known medical needs raises an inference of deliberate indifference to those needs." *Id.* (quotations omitted).

According to the Complaint, a physician outside the prison facility diagnosed Plaintiff with a displaced right zygomaticomaxillary complex fracture and sent records to NBCI noting the "need for follow-up treatment and possibly surgery at an outside facility." ECF 83, at 8 ¶ 34. Plaintiff alleges that these records were "made available to and reviewed" by Defendant Hoover, but Plaintiff was never treated for his fractured bones, which not only caused him unnecessary and lasting pain, but also disfigured his face. *Id.* at 8–9 ¶ 34. These facts, which the Court accepts as true, demonstrate that Defendant Hoover had actual knowledge of Plaintiff's zygoma fracture because WRMC provided Defendant Hoover with documentation detailing the diagnosis and recommending follow up treatment. *Id.* at 8 ¶ 34 ("Such a need for follow-up was charted in the outside facility's medical records, and those records were sent to NBCI, where they were made

11

available to and reviewed by Nurse Beeman and Nurse Practitioner Hoover."). Having found that Plaintiff sufficiently pled that Defendant Hoover had actual knowledge of Plaintiff's injuries, the Court now examines whether Defendant Hoover knowingly disregarded a substantial risk of serious harm to Plaintiff. *Farmer*, 511 U.S. at 837.

Plaintiff asserts that Defendant Hoover failed to bring "documented evidence of this major injury, or the need for follow-up surgical evaluation and treatment recommended by the outside facility, to the attention of their supervisors or prison administrators." ECF 83, at 11–12 ¶ 44. Moreover, Plaintiff alleges that he requested to see a provider to treat his facial injuries, and "Defendants either refused to bring him to sick call for treatment or refused to see him." *Id.* As a result of failing to treat Plaintiff's fractured facial bones, the bones healed in a displaced position "which disfigured Plaintiff and has continued to cause him problems to this day." *Id.* at 8–9 ¶ 34. Plaintiff contends Defendant Hoover "has made Plaintiff's prognosis associated with the injuries to his zygoma worse than it would have been had he received the care he needed." *Id.* at 17 ¶ 68.

Considering the above facts, which the Court accepts as true, Plaintiff states a plausible claim that Defendant Hoover knowingly disregarded both his fractured bones and the risk that delay in treatment would exacerbate the injury, satisfying the subjective element. Plaintiff alleges that Defendant Hoover refused to bring him to sick call for treatment, refused to see him or treat him, and failed to bring documented evidence of the injury to supervisors, which led to disfigurement and "unnecessary and lasting pain." *Id.* at 15–16 ¶ 63; *id.* at 9 ¶ 34; *see Hunt v. Sandhir*, 295 Fed. App'x. 584, 586 (4th Cir. 2008) (finding that plaintiff sufficiently alleged defendant knowingly disregarded a substantial risk of harm where defendant ended plaintiff's pain medication and did not treat plaintiff for a fractured elbow for nine days causing him terrible pain and rendering him unable to sleep); *see also Smith*, 589 F.3d at 739 (finding claim survives

12

dismissal where the plaintiff "alleged in his complaint that he was prescribed treatment by [a physician] for his foot infection and that when he sought to receive that treatment, he was unable to do so because [the defendant] ripped up the OTR, which authorized his treatment."). The allegations in the Complaint, construed in the light most favorable to the Plaintiff, are sufficient to state a claim that Defendant Hoover knew of Plaintiff's injuries and chose to ignore them, or at least to unnecessarily prolong Plaintiff's pain by refusing to administer treatment. Because Plaintiff plausibly alleges that Defendant Hoover was deliberately indifferent to the injuries Plaintiff sustained in the medical room, Defendant's motion to dismiss is denied with respect to Count II.

**C. Count III survives Defendant's motion to dismiss because Plaintiff has sufficiently pled facts to establish it is plausible that Defendant failed to provide medical treatment in connection with Plaintiff's nerve condition.**

Count III alleges that Defendant was deliberately indifferent to Plaintiff's serious medical condition, ulnar nerve compression. ECF 83, at 18–20 ¶¶ 71-77. As in the previous section, *supra* section B, the Court will evaluate whether Plaintiff has met his burden of pleading the objective and subjective elements[8] of deliberate indifference. *Stevens*, 68 F.4th at 931. The Court will begin with the objective prong and determine whether the Complaint identifies a serious medical need. "A 'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (citation omitted). "A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss." *Gibson v. Wright*, Civ. No.

---

[8] As noted above, Plaintiff must show he was exposed to a substantial risk of serious harm and Defendant Hoover knew of and disregarded the substantial risk to Plaintiff's health and safety. *Stevens*, 68 F.4th at 931.

20-1949, 2021 WL 1229733, at *2 (D.S.C. Mar. 9, 2021) (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 236, 347 (3d Cir. 1987).

Plaintiff alleges that he has a "chronic and severe left ulnar nerve compression at the elbow and mild left median nerve compression at the wrist, which were causing progressive atrophy and numbness of his left hand." ECF 83, at 18 ¶ 72. Plaintiff also asserts that he needed surgery "to prevent any further atrophy and further loss of use of his right hand" and to "prevent[] . . . progressive and irreversible loss of use of his left hand." *Id.* at 18–19 ¶¶ 72, 76. Drawing all inferences in favor of the Plaintiff, *Nemet Chevrolet, Ltd.,* 591 F.3d at 253, this Court is satisfied that "necessary nerve surgery," to prevent "irreversible [loss of use] of [Plaintiff's] left hand," qualifies as a sufficiently serious medical condition. *See* ECF 83, at 18–20 ¶¶ 71-77; *see also Murphy v. Walker,* 51 F.3d 714, 720 (7th Cir. 1995) (holding that a broken hand is a serious injury and permanent harm, or "lingering disability" could result absent proper evaluation, possible realignment, and treatment). As such, Plaintiff has satisfied the objective prong of the deliberate indifference analysis.

Turning to the subjective prong, to establish an Eighth Amendment violation, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson,* 775 F.3d at 178 (citing *Farmer,* 511 U.S. at 837–39). Here, the Court finds that Plaintiff has alleged sufficient facts showing that Defendant Hoover knew about Plaintiff's nerve condition and disregarded the risks to Plaintiff's health by failing to provide adequate treatment of the condition. According to the Complaint, at the time relevant to this case, Defendant Hoover was the Certified Registered Nurse Practitioner at NBCI, and her duties and responsibilities consisted of "prescribing medications, radiographic imaging and laboratory tests,

14

and *scheduling, obtaining approvals for, implementing, and facilitating necessary consultations and surgeries with specialists inside and outside the facility for acute and chronic conditions and diseases.*" ECF 83, at 3 ¶ 8 (emphasis added). Plaintiff further alleges that Defendant Hoover "deliberately withheld pain medication from him, abruptly discontinued and withdrew his medication for nerve pain for flimsy and pretextual reasons, ignored his sick call requests, and refused to see him in clinic." *Id.* at 18 ¶ 73. Accepting as true Plaintiff's assertion that Defendant Hoover discontinued medication for Plaintiff's nerve pain, it is thus reasonable to infer that Defendant Hoover had actual knowledge of Plaintiff's nerve condition.

The Court additionally finds that Plaintiff plausibly alleges that Defendant Hoover knowingly disregarded an "objectively serious condition, medical need, or risk of harm." *See Jehovah v. Clarke*, 798 F.3d 169, 181 (4th Cir. 2015). Plaintiff alleges that Defendant Hoover knew about Plaintiff's nerve condition, yet discontinued Plaintiff's medication to manage nerve pain, failed to treat his nerve condition, ignored Plaintiff's sick call requests, and refused to see him in clinic. ECF 83, at 18 ¶ 73. The Complaint further states that "[Defendant Hoover] knew that if the surgery were not done, Plaintiff's neuropathy would get worse and that Plaintiff would continue irreversibly to lose the use of his left hand." *Id.* at 18–19 ¶ 74. Nevertheless, Defendant allegedly "dragged her feet, found excuses not to schedule the surgery or to cancel it after it was scheduled, and did what she could to thwart Plaintiff's access to necessary medical care for his left-arm neuropathies." *Id.*

In other words, Plaintiff has pled facts that, if true, would establish that Defendant knowingly disregarded an objectively serious condition, medical need, or risk of harm. *Id.* at 19 ¶ 76; *see Hudson v. McHugh*, 148 F.3d 859, 863–64 (7th Cir. 1998) (subjective prong may be met by allegation that prison officials knew of serious medical condition and need for treatment but

15

nevertheless failed to provide treatment); *Chappelle v. Campbell*, No. 21-cv-863, 2023 WL
143150, at \*5 (E.D. Va. Jan. 5, 2023) (plaintiff sufficiently stated a claim where "the amended
complaint makes allegations of a worsening condition that [defendant] refused to treat, a
worsening that may have been due to the delay associated with providing treatment, and that
apparently required referral to an outside physician").  Considering Defendant Hoover's role at
NBCI, and drawing all inferences in favor of Plaintiff, Plaintiff plausibly alleges that Defendant
Hoover knew about Plaintiff's serious nerve condition and disregarded the risk of harm—
"irreversible [loss of] use of his left hand," ECF 83, at 18–19 ¶ 74—to Plaintiff by failing to
schedule, and cancelling, the surgery, discontinuing medication to treat nerve pain, ignoring
Plaintiff's sick call requests, and refusing to see him in clinic.  As such, the Court finds Plaintiff
has stated a plausible claim of deliberate indifference as to Defendant's failure to treat Plaintiff's
nerve condition.  Defendant's motion to dismiss is denied with respect to count III.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF 88, is **GRANTED** in part
and **DENIED** in part.  Count I of Plaintiff's Complaint is dismissed with prejudice with respect to
Defendant Hoover but Counts II and III survive.

A separate implementing Order will issue.

Dated: October 2, 2024                                          /s/
                                                          Brendan A. Hurson
                                                          United States District Judge

16